Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 3465 | **DATE** | 7/12/2000 |
| **CASE TITLE** | United States of America ex rel., Walter Jackson vs. George DeTella | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Petitioner's Habeas Petition [1] is denied. This action is dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 14 2000 | |
| | Notified counsel by telephone. | | date docketed | 29 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel., WALTER JACKSON, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) No. 97 C 3465 |
| GEORGE DE TELLA, | )<br>) Judge Joan B. Gottschall |
| Defendant. | )<br>) |

## MEMORANDUM OPINION AND ORDER

State prisoner Walter Jackson has filed a petition for a writ of habeas corpus, alleging seven grounds on which his conviction and sentence for first-degree murder are constitutionally infirm. The court finds that all seven of the grounds are either procedurally defaulted, meritless or both. The court finds no error by the state courts that would warrant a grant of habeas under 28 U.S.C. § 2254. Jackson's petition is denied.

## Background

Stemming from the 1988 murder of his brother, petitioner Jackson was convicted of first-degree murder after a jury trial, and sentenced to a 49-year prison term. Jackson appealed his conviction and sentence to the Illinois Appellate Court, raising four claims: first, that he did not knowingly and intelligently waive his right to counsel; second, that the State's failure to disclose a prosecution witness until the commencement of his trial prevented Jackson from adequately preparing his defense; third, that he was not proved guilty beyond a reasonable doubt; and fourth, that his constitutional rights were violated when he was not given a prompt preliminary hearing. The Illinois Appellate Court affirmed Jackson's conviction and sentence on May 1, 1992 in a

thirteen-page order. (Exh. A to Resp.'s Answer)

Jackson then filed a petition for leave to appeal in the Illinois Supreme Court, raising the same claims – although styled somewhat differently – as he raised in the Illinois Appellate Court. (Exh. B to Resp.'s Answer) Additionally, he raised four new claims: first, that the prosecutor committed misconduct by improperly shifting the burden of proof, arguing facts outside of the evidence, and improperly de-emphasizing the State's burden of proof; second, that the statute under which he was convicted violated due process by relieving the State's burden of proving each element of murder; third, that he was denied due process where the circuit court judge failed to grant his motion to substitute judges; and fourth, that he was denied his right to effective assistance of counsel during his motion for a new trial and sentencing. The Supreme Court summarily denied Jackson's petition for leave to appeal on October 7, 1992. (Exh. C to Resp.'s Answer)

Jackson filed a petition for post-conviction relief with the trial court, raising various claims:

- that he was denied due process where he had no opportunity to present a full defense to the jury;
- that he was denied due process where he had no opportunity to present the exculpatory testimony of Kenneth Turner;
- that he was denied due process where the trial judge failed to secure Turner's testimony;
- that he was denied due process and a fair trial where he was given only five minutes to discover, investigate, and develop a strategy for addressing the inculpatory testimony of his brother and sister;
- that the trial judge erroneously ruled that Jackson failed to answer discovery;

2

- that prosecutorial misconduct occurred where the State improperly shifted the burden of proof, argued facts outside of the evidence during closing arguments, and improperly de-emphasized its own burden of proof;

- that waiver should not be applied to his claims because the failure to raise them previously was due to his counsel's incompetence;

- that the State failed to disclose the statements of prosecution witnesses until the commencement of trial;

- that he was denied due process where the circuit court judge failed to grant his motion to substitute judges;

- that he was denied effective assistance of counsel during his motion for a new trial, sentencing, and on appeal;

- that his counsel's failure to investigate and present available witnesses constituted ineffective assistance;

- that proper investigation during Jackson's motion for a new trial would have disclosed at least three additional defense witnesses;

- that the Illinois murder statute under which he was convicted violates due process because it relieves the State of proving every element of murder beyond a reasonable doubt.

(Exh. D to Resp.'s Answer) On April 20, 1993, the circuit court dismissed Jackson's post-conviction petition.

Jackson then filed a notice of appeal, and the Office of the Public Defender was appointed to represent him. On appeal, Jackson argued only that the circuit court erred in not appointing post-conviction counsel where Jackson had made sufficient allegations that his constitutional rights had been violated. (Exh. E to Resp.'s Answer) On April 21, 1995, the Illinois Appellate Court affirmed the circuit court's dismissal of Jackson's post-conviction petition. (Exh. F to Resp.'s Answer)

On June 4, 1996, Jackson filed a petition for leave to appeal with the Illinois Supreme

Court, raising ten claims:

- that the Illinois Appellate Court erred in denying Jackson's motion to proceed *pro se* on appeal;

- that the circuit court erred in denying his post-conviction petition because Jackson was entitled to effective assistance of counsel before trial and at his sentencing;

- that he was denied due process and a fair trial;

- that prosecutorial misconduct occurred;

- that the Illinois murder statute violates due process;

- that the State did not disclose the statements of prosecution witnesses until the commencement of trial;

- that he was denied due process where the circuit court failed to grant his motion to substitute judges;

- that he was denied the effective assistance of counsel before trial;

- that he was denied the effective assistance of counsel during his motion for a new trial and at sentencing;

- that he was denied his right to a speedy trial.

(Exh. G to Resp.'s Answer) On October 2, 1996, the Illinois Supreme Court summarily denied Jackson's petition. (Exh. H to Resp.'s Answer) This habeas petition followed.

## Analysis

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. 104-132, 110 Stat. 1218 (1996), the court may not grant Jackson's habeas petition unless he has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan*

*v. Boerckel*, 119 S. Ct. 1728, 1731 (1999). This rule "reduces friction between the state and federal court systems by avoiding the 'unseemliness' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *Id.* at 1732 (internal brackets omitted).

To meet this exhaustion requirement, Jackson "must have raised all of his claims during the course of the state proceedings, presenting each claim fully and fairly to the state courts." *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999) (citing *Verdin v. O'Leary*, 972 F.2d 1467, 1472 (7th Cir. 1992)). Fair presentment requires Jackson "to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Id.* For a constitutional claim to be fairly presented, "both the operative facts and the 'controlling legal principles' must be submitted" for the court's review. *Id.*

Even if Jackson has raised all of his habeas claims in state court, this court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). This doctrine bars "federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* at 729-30.

Where a petitioner has procedurally defaulted, this court may review the underlying claims only if the habeas petition "shows cause for failure to raise them at the appropriate time and actual prejudice which resulted from such failure." *Rodriguez*, 193 F.3d at 917 (citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)). Absent this showing, "a defaulted claim is reviewable only if refusal to consider it would result in a 'fundamental miscarriage of justice,' that is, where

'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986)). This would require Jackson "to show that it is more likely than not that no reasonable juror would have convicted him." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)); *see also Buelow v. Dickey*, 847 F.2d 420, 427 (7th Cir. 1988) (holding that court "may set aside the cause-and-prejudice test and permit a habeas petition if, due to a fundamentally unjust trial, an innocent defendant was convicted"), *cert. denied*, 489 U.S. 1032 (1989).

Of course, this court properly may address those claims that are not procedurally defaulted. That is not to say that the court will undertake a *de novo* review of such claims. Rather, apart from issues of pure constitutional interpretation, this court must defer considerably to the state court's ruling. As long as the state court employed the proper constitutional framework in analyzing Jackson's claims, this court will leave any reasonable determination reached by that court undisturbed.

In *Lindh v. Murphy*, 96 F.3d 856, 870 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997), the Seventh Circuit rejected the notion that the recently amended § 2254 authorizes the issuance of a habeas writ whenever a court errs. While the federal courts must ensure that state courts adhere to the legal principles set forth by the United States Supreme Court, "when the dispute lies not in the meaning of the Constitution, but in its application to a particular set of facts . . . sec. 2254(d)(1) restricts the grant of collateral relief to cases in which the state's decision reflects 'an unreasonable application of' the law." *Id.* In other words, § 2254(d)(1) "tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called 'unreasonable.'" *Id.*

6

The *Lindh* court's synopsis of the state court's approach lends further insight into the scope of this court's review: "The [state court] opinion . . . is careful; it correctly states the holdings of [the relevant cases]; it does not transgress any clearly established principles; instead it addresses a matter of degree about which thoughtful people can, and do, differ." *Id.* at 877. According to *Lindh*, second-guessing the state court's holding in that context would be inappropriate, for "[b]y restricting in the new § 2254(d)(1) the scope of the extraordinary relief provided by the writ of habeas corpus, Congress has instructed the inferior federal courts to refrain from this sort of fine tuning." *Id.*

<u>Ground One: Ineffective Assistance of Counsel Before Trial</u>

Jackson alleges that a conflict of interest arose between him and the Office of the Public Defender before trial. The appointed counsel, he claims, refused to secure him a speedy trial, investigate his defense, or assist Jackson in filing motions. Jackson also alleges that the counsel shared his files' contents with Jackson's mother and wife, leading to his divorce and loss of support. (Habeas Pet. at 8) According to Jackson, the counsel then filed a motion to withdraw, forcing Jackson to proceed *pro se*.

In addressing this claim on direct appeal, the Illinois Appellate Court traced the course of Jackson's relationship with his appointed public defender. In May and June 1989, Jackson repeatedly requested representation by counsel other than the public defender. (Exh. A to Resp.'s Answer at 2) Judge Morrissey – the original trial judge – denied the requests, finding that Jackson failed to state any grounds for the relief sought. (*Id.*) In October 1989, Jackson again filed motions to appoint other counsel and to dismiss the public defender. Both motions were denied.

7

On December 8, 1989, Jackson filed a *pro se* motion to substitute judges, which was heard before Judge Thomas. At that time, Jackson's public defender filed a motion to withdraw and for appointment of other counsel. The counsel explained that Jackson had filed an ineffective assistance complaint against the entire public defender's office with the Attorney Registration and Disciplinary Commission (ARDC). (*Id.*) At the hearing before Judge Thomas, Jackson requested that he be allowed to represent himself and proceed *pro se*. Judge Thomas allowed the public defender's office to withdraw, and then – in three different hearings – verified that Jackson's waiver was knowing and intelligent. (*Id.* at 2-4) The judge then denied Jackson's motion to substitute judges, and referred the case back to Judge Morrissey.

Judge Morrissey found that Judge Thomas lacked the authority to allow the public defender's withdrawal, and asked Jackson if he wanted counsel. Jackson declined and reiterated his request to proceed *pro se*. (*Id.* at 4) After verifying that Jackson's waiver was knowing and intelligent, Judge Morrissey allowed the public defender to withdraw. (*Id.*) On January 8, 1990, before Judge Morrissey, Jackson filed numerous *pro se* motions and requested a jury trial. On February 5, 1990 – the day trial was scheduled to begin – Jackson announced that he was not ready to proceed and that he wanted to be appointed counsel other than the public defender.

The next day, Jackson appeared before Judge Crilly, again asking for a substitution of judges. Jackson contended that he was representing himself only because he was forced to do so by the public defender's withdrawal. (*Id.* at 5) Judge Crilly denied Jackson's motion for substitution, finding no evidence of bias by Judge Morrissey. Jackson proceeded at trial *pro se*, and Judge Morrissey assigned him a "standby advisory counsel" from the public defender's office. (*Id.*)

8

The Illinois Appellate Court rejected Jackson's argument that he was "forced" to represent himself by the public defender's withdrawal. The appellate court found that Jackson knowingly and intelligently waived his right to counsel:

> Review of the record indicates that both Judges Morrissey and Thomas queried defendant as to whether he understood the nature of the charges, the maximum and minimum penalties prescribed by law, and the right to appointed counsel if indigent. Both judges strongly discouraged defendant from embarking upon his own defense, yet defendant persisted in invoking his sixth amendment right to self-representation. Defendant, age 37, had earned a high school equivalency certificate, and had been found mentally fit to stand trial. Defendant had several arrests prior to this offense, and also filed numerous *pro se* pre-trial motions in this case; thus, it appears that defendant possessed sufficient familiarity with the judicial process to advance his defense. In addition, the trial judge also assigned an assistant public defender as advisory counsel to assist defendant throughout the trial.

(*Id.* at 9-10)

The appellate court was "unpersuaded by defendant's trial day request for other counsel because of the public defender's withdrawal." (*Id.* at 10) The court noted that the public defender only withdrew after being the subject of an ARDC complaint filed by Jackson, and observed that Jackson – at no less than five hearings before two different judges – had "unequivocally indicated his desire to proceed *pro se*, and agreed to begin trial on February 5, 1990." (*Id.*) Accordingly, the appellate court found "defendant's trial day request for other counsel little more than a dilatory tactic." (*Id.*)

The appellate court also held that "it was well within the discretion of the trial court to deny defendant's request for counsel other than the public defender," noting that "[a]lthough defendant has an unqualified right to assistance of counsel, he does not have an unqualified right to choose his court-appointed attorney." (*Id.*) The appellate court found that Jackson "failed to show good cause for appointing an attorney other than the public defender." (*Id.* at 11)

9

This court does not find that the Illinois Appellate Court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Supreme Court has recognized that a criminal defendant can waive his right to counsel and proceed *pro se*. *See Johnson v. Zerbst*, 304 U.S. 458, 465 (1938). Waiver is a factual question regarding "the intentional relinquishment or abandonment of a known right or privilege." *Id.* at 464. To qualify as an effective waiver, it "suffices that a defendant know the character of the risks at stake and proceed with his eyes open." *United States v. Goad*, 44 F.3d 580, 586 (7th Cir. 1995) (internal quotation marks omitted). The court's findings reflect a valid waiver by Jackson.

Further, Jackson's right to counsel was not violated when the trial court denied his requests for counsel other than the public defender. "[T]he offer of court-appointed counsel to represent a defendant satisfies the constitutional obligation of a state to provide a defendant with legal assistance under the Sixth and Fourteenth Amendments." *United States ex rel. George v. Lane*, 718 F.2d 226, 231 (7th Cir. 1983). Nor was Jackson's right to counsel violated where he faced a choice of proceeding *pro se* or proceeding with an appointed counsel whom he apparently did not like. "As a criminal defendant," Jackson "had a right to appointed counsel, but he had no right to select his own appointed counsel." *Goad*, 44 F.3d at 590; *see also Wilks v. Israel*, 627 F.2d 32, 36 (7th Cir. 1980) ("That petitioner did not particularly like the choice [of counsel] presented to him and that he did not want to proceed *pro se* are not sufficient reasons to render the choice constitutionally offensive."), *cert. denied*, 449 U.S. 1086 (1981).

Jackson's apparent attempt to twist this ineffective waiver claim into an ineffective

assistance of pretrial counsel claim fails for several reasons, including his inability to establish prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984). Given that Jackson's knowing and intelligent waiver of his right to counsel and his agreement to proceed to trial came after the public defender had rendered the purportedly ineffective assistance, he cannot show that his subsequent conviction resulted from his previous counsel's representation, rather than his own. Moreover, to the extent Jackson seeks to bring a claim on habeas review that is substantively different from the one he raised on direct appeal, the claim is procedurally defaulted.

*Ground Two: Denied Opportunity to Present Effective Defense*

Jackson alleges that his due process rights were violated because he "was not allowed to talk or communicate with any of the witnesses before trial," and he did not receive twenty-four pages of discovery from his former counsel until the day of trial. (Habeas Pet. at 9-10) He also alleges that the trial judge denied Jackson the opportunity to call a defense witness, Kenneth Turner, based on Jackson's failure to comply with discovery rules and the witness's irrelevance to the case. (*Id.* at 10-11)

To the extent this claim is based on Jackson's inability to communicate with prosecution witnesses before trial, it is meritless. "It is well-settled that the Constitution does not require pretrial disclosure of prosecution witnesses." *United States v. Edwards*, 47 F.3d 841, 843 (7th Cir. 1995) (citations omitted). As for the allegation that Jackson did not receive twenty-four pages of discovery from the public defender until the day of trial, Jackson makes no showing that the documents were material, much less exculpatory. While the State must disclose material evidence that is favorable to the accused, *see Brady v. Maryland*, 373 U.S. 83, 87 (1963), a criminal defendant's right to discovery is otherwise limited. *See Degen v. United States*, 517

11

U.S. 820, 825 (1996). Further, Jackson alleges that his former counsel, not the State, withheld the materials.

Regardless of the merits of these allegations, they are procedurally defaulted because Jackson did not raise them on direct appeal,[1] and on post-conviction review he did not state them in sufficient factual specificity to allow substantive review by the state court. After the circuit court denied the petition as frivolous, Jackson's appointed counsel on appeal conceded that Jackson had presented only "two of his claims with enough specificity to qualify as statements which present the gist of a constitutional claim for relief," as required under Illinois law. (Exh. F to Resp.'s Answer at 2-3) Accordingly, the Illinois Appellate Court addressed only those two claims – the denial of Jackson's right to call Kenneth Turner, and an *ex parte* communication by the trial judge.

This court may not review a question that has been resolved "by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729. Because the Illinois Appellate Court declined to address the merits of these claims on the ground that they were not pled in accordance with Illinois procedural law, the claims are now off-limits to this court. "[F]ailure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court." *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir. 1996). Moreover, other than a general ineffective assistance of counsel allegation, Jackson has not

---

[1] On direct appeal, Jackson did argue that he was denied a fair trial because the State failed to disclose Jessie Kimble as a witness until the commencement of trial. To the extent his habeas claim is based on this argument, it is procedurally defaulted nevertheless. The Illinois Appellate Court refused to address the argument's merits, finding that it had been waived due to Jackson's failure to object to Kimble's testimony at trial. (Exh. A to Resp.'s Answer at 11)

12

alleged cause for this default. Because he acted *pro se* in filing his post-conviction petition – and because there is no right to post-conviction counsel in the first place – he cannot establish cause through an ineffective assistance claim.

Jackson has also procedurally defaulted on the other aspect of this second habeas ground – that he was denied the right to call Kenneth Turner as a defense witness. The Illinois Appellate Court, on post-conviction review, found that this issue could have been raised on direct appeal, and so was waived for purposes of post-conviction relief. (Exh. F to Resp.'s Answer at 4) Further, the court found that, assuming the failure to raise the claim was encompassed by Jackson's ineffective assistance allegation, Jackson "failed to allege the gist of a meritorious constitutional claim for relief." (*Id.* at 4) Under either circumstance, the claim was waived.

It is worth noting, however, that in addressing Jackson's ineffective assistance of appellate counsel claim, the Illinois Appellate Court found that Turner's testimony would not have changed the verdict:

> Turner's statement that he "heard two shots and saw a guy (individual) come out of the yard next to the church with a rifle and run down the alley" would not have changed the verdict when compared to the overwhelming evidence against defendant. Defendant's brother and sister testified that defendant was embroiled in an argument with another brother. Further testimony indicated that defendant shot the victim in his back as he ran away from defendant. This testimony was corroborated by a disinterested witness. Turner was not an eyewitness to the shooting, but supposedly only saw someone run away with a gun. This testimony would not have precluded the jury from finding that defendant shot his brother.

(*Id.* at 5) Because Jackson "cannot demonstrate that had appellate counsel argued this issue on appeal, his conviction would have been reversed," the appellate court found that his appellate counsel was not ineffective. (*Id.* at 6) For the same reason, the counsel's failure to raise this issue on direct appeal does not constitute cause for Jackson's procedural default. *See Coleman v.*

13

*Thompson*, 501 U.S. 722, 753-54 (1991) (holding that attorney error is not cause for a procedural default unless the error constitutes ineffective assistance of counsel). Further, the court's failure to review the claim does not give rise to a fundamental miscarriage of justice. Accordingly, the court will not review it.

*Ground Three: Prosecutorial Misconduct*

Jackson alleges that the prosecutor committed misconduct by arguing outside of the record, misstating evidence, and making improper comments. (Habeas Pet. at 12-13) For the same reason set forth above, this claim is procedurally defaulted. Jackson did not raise the claim on direct appeal, and on post-conviction review the Illinois Appellate Court declined to address its merits because Jackson failed to set forth facts sufficient to satisfy Illinois procedural law. (Exh. F to Resp.'s Answer at 2-3) This court may not review a question that has been resolved by a state court on state procedural grounds. *See Coleman*, 501 U.S. at 729-30. As discussed above, Jackson cannot rely on an ineffective assistance claim as cause for deficiencies in his post-conviction petition. Further, because this claim does not bear on Jackson's guilt or innocence, the court's failure to review it does not create a fundamental miscarriage of justice.

*Ground Four: Unconstitutional Murder Statute*

Jackson alleges that the Illinois murder statute under which he was convicted is unconstitutional because it relieves the State of proving each element of murder beyond a reasonable doubt. (Habeas Pet. at 14) Again, this claim is defaulted because Jackson did not raise it on direct appeal, and on post-conviction review the Illinois Appellate Court declined to address its merits, finding that Jackson failed to comply with Illinois procedural law.

*Ground Five: Ineffective Assistance During Motion for New Trial and Sentencing*

14

Jackson alleges that the counsel appointed to represent him during his motion for a new trial and sentencing was ineffective. According to Jackson, the counsel "misstated the facts" and "made unsubstantiated allegations" at a post-trial hearing. (Habeas Pet. at 18) The counsel failed to secure a continuance, and refused to interview or investigate the potential witnesses suggested by Jackson. This claim is procedurally defaulted for the precise reasons governing Jackson's second, third and fourth grounds.

*Ground Six: Appellate Court Error in Finding that Jackson Received a Speedy Trial*

Jackson alleges that the Illinois Appellate Court erred in ruling that the 30-day period in which the State must conduct a preliminary examination or bring an indictment against a criminal defendant was not triggered until he was extradited to Illinois. Jackson argues that the period was triggered upon his arrest in Louisiana, regardless of how long the extradition process took. Under Illinois law, the State must conduct a preliminary examination or bring an indictment against a criminal defendant within 30 days from the date the State obtains custody, *see* 725 ILCS 5/109-3.1, and must bring the defendant to trial within 120 days from the date of custody. *See* 725 ILCS 5/103-5(a).

The language of Jackson's habeas petition makes it unclear whether he is claiming a violation of his 30-day statutory right, his 120-day statutory right, or both. In any event, to the extent this claim is based on a violation of Illinois statutory law, it is noncognizable on habeas review. "Violations of state law alone are, of course, not cognizable in federal habeas corpus proceedings .... A habeas petitioner must show that the state law violation resulted in a violation of federal constitutional rights." *Steward v. Gilmore*, 80 F.3d 1205, 1214 (7th Cir. 1996). Indeed, the focus of Jackson's claim appears to be that the Illinois Appellate Court erred

in ruling that the 30-day period was triggered upon his extradition, not upon his arrest in another state. This ruling – as well the determination of the 120-day period's trigger – are issues clearly beyond the scope of this court's habeas review. *See, e.g., Hogan*, 74 F.3d at 145 (observing that state's "statutory speedy-trial rules are not enforceable under § 2254").

To the extent this claim can be construed as implicating Jackson's federal constitutional right to a speedy trial, the State argues that it is procedurally defaulted because Jackson presented this claim to the state courts solely in terms of his rights under Illinois statutory law. The court need not determine whether Jackson's pleading of the claim was sufficient to put the state courts on notice of its Sixth Amendment ramifications; it fails on the merits regardless.

In analyzing a speedy trial claim under the Sixth Amendment, the court must balance four factors: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of the right to a speedy trial; and 4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Based on the reasons underlying the delay of Jackson's trial and the lack of prejudice to him, this court finds that Jackson's constitutional right to a speedy trial was not violated.

Jackson was taken into custody on September 4, 1988, in Louisiana. He was extradited from Louisiana to Illinois on November 30, 1988, and was indicted by a grand jury on December 29, 1988. (Exh. A to Resp.'s Answer at 12) While the record does not set forth a comprehensive timeline of his case's progression, Jackson filed a "Petition for Discharge Based on Statutory Right to Speedy Trial" that recounts various trial continuances agreed to by Jackson's appointed counsel. Further, beginning on May 17, 1989 and continuing until his February 1990 trial, Jackson brought numerous motions to replace his appointed counsel and to substitute judges. (*Id.* at 2-5) These motions required hearings – at least twice before other judges – and ultimately

16

resulted in the public defender's withdrawal. In light of this record, the thirteen months between indictment and trial does not appear unreasonable. Even more significantly, Jackson has shown no prejudice from his trial's delay. Accordingly, the court finds that Jackson was not denied his Sixth Amendment right to a speedy trial. *See, e.g., United States v. Rothrock*, 20 F.3d 709, 712 (7th Cir. 1994) ("In light of the reasons for the delay and the lack of prejudice stemming from it, we do not believe the twenty month delay in this case violated the speedy trial requirements of the Constitution.").

*Ground Seven: Ineffective Assistance of Appellate Counsel*

Jackson argues that his appointed appellate counsel was ineffective for failing to raise these habeas issues on direct appeal. His appellate counsel did raise the first habeas ground, as well as aspects of the second and sixth grounds, on direct appeal. The other aspects of grounds two and six are meritless, and thus Jackson was not prejudiced by his counsel's failure to raise them. The court has reviewed Jackson's submissions in support of grounds three, four, and five, and finds them to be similarly meritless. Accordingly, Jackson cannot establish prejudice, as required by *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Further, this court has reviewed the appellate brief prepared by Jackson's appointed counsel, and finds it to be far from constitutionally deficient. *See id.*

To the extent Jackson seeks to base this ineffective assistance claim on his post-conviction counsel, it also fails, as there is no constitutional right to post-conviction counsel. *See Steward v. Gilmore*, 80 F.3d 1205, 1212 (7th Cir. 1996) (recognizing that "[i]neffective assistance of postconviction counsel is not itself a cognizable federal constitutional violation").

17

## Conclusion

The court finds that there are no factual issues that warrant an evidentiary hearing in this case. Jackson's petition for a writ of habeas corpus is denied. This action is dismissed.

ENTER:

*[signature]*

JOAN B. GOTTSCHALL
United States District Judge

DATED: July 12, 2000